# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **LIBERTY CHURCH OF THE ASSEMBLIES OF GOD & SAMUEL ROCHA,** <br>             **Plaintiffs,** <br><br> v. <br><br> **MICHAEL POMPEO, U.S. Secretary of State; KEN CUCCINELLI, Director, U.S. Customs and Border Protection; CHAD WOLF, Secretary, Department of Homeland Security; & WILLIAM BARR, Attorney General,** <br>             **Defendants.** | CIVIL ACTION <br> NO.  20-10274-TSH |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS (Docket No. 8)

### July 1, 2020

**HILLMAN, D.J.,**

Liberty Church of the Assemblies of God ("Liberty Church") and Samuel Rocha (collectively, "Plaintiffs") filed the instant action against Michael Pompeo, U.S. Secretary of State; Ken Cuccinelli, Director of U.S. Customs and Border Protection; Chad Wolf, Secretary of the Department of Homeland Security; and William Barr, Attorney General (collectively, "Defendants"), seeking an order requiring Defendants "to act on [Mr. Rocha's] application and issue his visa." (Docket No. 1 at 7).  Defendants move to dismiss under the doctrine of consular nonreviewability.  (Docket No. 8).  For the following reasons, the Court ***grants*** their motion.

### Statutory Background

Every alien is presumed to be an immigrant "until he establishes to the satisfaction of the consular officer . . . that he is entitled to a nonimmigrant status under section 1101(a)(15) of this

title." *See* 8 U.S.C. § 1184(b). Section 1101(a)(15) provides for nonimmigrant status if, *inter alia*, the alien is a religious worker. *See id.* § 1101(a)(15)(R). An alien qualifies as a religious worker (also known as R status) if he "has been a member of a religious denomination having a bona fide nonprofit, religious organization in the United States" for "the 2 years immediately preceding the time of application for admission," (2) "seeks to enter the United States for a period not to exceed 5 years to perform [religious] work," and (3) intends to depart the United States when his visa expires. *Id.*; 8 C.F.R. § 214.2(r)(15). The alien bears the burden of proving that he meets the requirements for R status. *See* 8 U.S.C. § 1361.

An employer may petition the Government for R status on behalf of an alien seeking to work in the United States by filing a Form I-129. An approved petition renders the alien eligible to work for the employer. An approved petition, however, is not a visa and will not permit the alien to enter the United States from abroad. Thus, if an alien with an approved petition leaves the country, he must visit a U.S. Consulate to obtain a visa before he may reenter.

## Factual Background

Liberty Church is a nonprofit religious organization. Samuel Rocha, a citizen of Brazil, is one of its members. In November 2017, Liberty Church filed a Form I-129 seeking R status on Mr. Rocha's behalf. The Government approved the petition on December 26, 2018,[1] and the Church hired Mr. Rocha to serve as its Director of Music and Media.

In November of 2019, Mr. Rocha travelled to Brazil to become engaged to his fiancée. Because he only had an approved petition when he left the United States, Mr. Rocha needed to obtain an R-1 visa from the U.S. Consulate General in Rio de Janeiro before he would be allowed

---

[1] The approval is valid until December 1, 2020. (Docket No. 11-1 at 13–14).

to return to the United States.  When he sought an R-1 visa from the U.S. Consulate General, however, the consular officer found him ineligible for R status and denied his application.

Mr. Rocha returned to the U.S. Consulate General twice in December 2019 to file a new visa application providing additional evidence of his ties to Brazil.  On December 5, a consular officer again found him ineligible and denied his application for an R-1 visa.  Two weeks later, a different consular officer denied Mr. Rocha's application without reviewing any of his supporting documentation.  She stated that Mr. Rocha was ineligible for an R-1 visa because he had been in the USA for five years and she did not believe he had any intention of returning to Brazil when his visa expired.  She also indicated that, even if Mr. Rocha reapplied in the future with further evidence, her decision would not change. (Docket No. 1 at 4).

On February 12, 2020, Plaintiffs filed a complaint before this Court seeking an order "[r]equiring Defendants to act on Plaintiff's application[2] and issue his visa." (Docket No. 1 at 7). Defendants moved to dismiss on April 14, 2020, arguing that the doctrine of consular nonreviewability bars the instant action.

## Discussion

A court generally may not review a consular officer's decision to deny a visa to an individual.[3]  *See Chiang v. Skeirik*, 582 F.3d 238, 242 (1st Cir. 2009) ("Under the doctrine of

---

[2] By denying Mr. Rocha's request for a visa, the consular officer did act on Plaintiff's application.  The Court presumes that Plaintiffs seek to compel a specific decision, namely, the grant of a visa, and not just *any* decision.

[3] As a preliminary matter, the Court determines that it only has jurisdiction under 28 U.S.C. § 1331.  Although Plaintiffs alternatively plead jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 704, the Court agrees with the D.C. Circuit that consular nonreviewability stands as an exception to judicial review under 5 U.S.C. § 702.  *See Saavedra Bruno v. Albright*, 197 F.3d 1153, 1160 (D.C. Cir. 1999).  Similarly, although Plaintiffs plead jurisdiction under the Mandamus and Venue Act, 28 U.S.C. § 1361, a court may only grant mandamus relief where, *inter alia*, "the officer's duty to act is nondiscretionary, ministerial and so plainly prescribed as to be free from

consular nonreviewability, in immigration disputes nonconstitutional issues are generally outside the jurisdiction of the courts"). "However, there is at least one limited exception to the doctrine of consular nonreviewability that permits judicial review when the consular denial of a visa may impact the [constitutional] rights of persons within the United States." *Am. Sociological Ass'n v. Chertoff*, 588 F. Supp. 2d 166, 169 (D. Mass. 2008) (citing *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972)); *see also Chiang*, 582 F.3d at 242. Plaintiffs suggest that their claims are reviewable under this exception. The Court disagrees.

First, the Court cannot review Mr. Rocha's claims under this exception because, as a noncitizen not physically present in the United States, he does not have any constitutional rights to assert against Defendants. The Court therefore dismisses him as a plaintiff.

Second, the Court declines to review Liberty Church's claims under this exception because the complaint fails to plausibly plead a violation of Liberty Church's constitutional rights. Although Liberty Church broadly alleges that the act of denying Mr. Rocha a visa infringed its rights under the Establishment Clause[4] by making it "suddenly and unduly unable to establish church services" (Docket No. 6–7),[5] it has not explained *how* it has been unable to establish church

---

doubt," and here, granting a visa is not a nondiscretionary, ministerial, and plainly prescribed duty. *See Pishdadiyan v. Clinton*, No. 11-10723, 2012 WL 601907, at *8–9 (D. Mass. Feb. 7, 2012).

[4] The Establishment Clause provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The Court is not convinced that the denial of a visa qualifies as a "law respecting an establishment of religion," *see Strout v.* Albanese, 178 F.3d 57, 64 (1st Cir. 1999) (noting that "[t]he Establishment Clause forbids *the making of* a law respecting the establishment of any religion" and does not provide a basis for recovery in other scenarios (emphasis added)), but it assumes for the purposes of this motion that it could be.

[5] Liberty Church conceded at a hearing before this Court on June 12, 2020, that its complaint does not assert any claim under the Fifth Amendment, despite brief references to the Due Process Clause and being deprived of the benefit of an approved visa petition. Even if Liberty Church had properly raised a Fifth Amendment claim based on concerns with how the consular officer reviewed Mr. Rocha's visa application, however, the Court would dismiss this claim because, as explained in more detail below, the officer provided facially legitimate and bona fide reasons for her denial.

services in the wake of the denial.  There is no indication, for example, that Liberty Church cannot operate without Mr. Rocha as its Director of Music and Media.  Indeed, the allegations in the complaint suggest the exact opposite; Liberty Church was able to operate without issue for at least two years before it hired Mr. Rocha as Director of Music and Media.  To the extent Liberty Church instead means to contend that it needs *someone* (if not Mr. Rocha himself) to serve as Director of Music and Media, nothing in the complaint would allow the Court to reasonably infer that the denial of Mr. Rocha's visa application rendered Liberty Church unable to employ a Director of Music and Media.  Liberty Church may have experienced some difficulty in finding a replacement for Mr. Rocha, but Liberty Church does not tie these difficulties to Defendants or otherwise suggest that Defendants prevented it from hiring another Director of Music and Media.

Even assuming the Court could set aside the lack of factual support, however, and accept as true the conclusory statement that Liberty Church has been unable to establish church services in the wake of the visa denial, the Court would still determine that the complaint fails to plausibly demonstrate a violation of the Establishment Clause.  While the Supreme Court has not articulated any single test to determine whether a law runs afoul of the Establishment Clause, *Freedom From Religion Found. v. Hanover Sch. Dist.*, 626 F.3d 1, 7 (1st Cir. 2010); *see, e.g.*, *Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2090 (2019); *Lee v. Weisman*, 505 U.S. 577, 587 (1992); *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971), its case law generally suggests that the purpose of the clause is to "prohibit[] government from appearing to take a position on questions of religious belief or from making adherence to a religion relevant in any way to a person's standing in the political community," *Perrier-Bilbo v. United States*, 954 F.3d 413, 422 (1st Cir. 2020) (citations and internal quotations omitted); *see also Lee*, 505 U.S. 577, 587 (1992) ("It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support

or participate in religion or its exercise, or otherwise act in a way which establishes a [state] religion or religious faith, or tends to do so." (citations and internal quotations omitted)); *Lemon*, 403 U.S. at 612 (1971) (noting that "the three main evils against which the Establishment Clause was intended to afford protection" are "'sponsorship, financial support, and active involvement of the sovereign in religious activity'" (quoting *Walz v. Tax Commission*, 397 U.S. 664, 668 (1970))); *Everson v. Bd. of Ed. of Ewing Twp.*, 330 U.S. 1, 15–16 (1947) ("The 'establishment of religion' clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force nor influence a person to go to or to remain away from church against his will or force him to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance. No tax in any amount, large or small, can be levied to support any religious activities or institutions, whatever they may be called, or whatever form they may adopt to teach or practice religion. Neither a state nor the Federal Government can, openly or secretly, participate in the affairs of any religious organizations or groups and vice versa. In the words of *Jefferson*, the clause against establishment of religion by law was intended to erect 'a wall of separation between Church and State.'" (citations omitted)); *see also Marrero-Mendez v. Calixto-Rodriguez*, 830 F.3d 38, 44 (1st Cir. 2016) ("[T]he organizing principle of the Establishment Clause is 'governmental neutrality'—between 'religion and nonreligion,' as well as among religions." (quoting *McCreary Cty. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 860 (2005))). Here, the complaint is devoid of any allegations that would allow the Court to reasonably infer that the denial reflected "a position on questions of religious belief," made "adherence to a religion relevant in any way to a person's standing in the political community," or otherwise entangled the government with

religion.  *See Perrier-Bilbo*, 954 F.3d at 422.  Liberty Church does not, for example, plead that the consular officer denied Mr. Rocha a visa because of his role within Liberty Church or that the denial reflected any opinion as to the merits of the church's religious beliefs.  The Court thus must dismiss Liberty Church's claims as unreviewable.

Even if Liberty Church had established a constitutional violation, however, the Court would nonetheless grant the motion to dismiss on the merits.  In *Mandel*, the first case to recognize a constitutional exception to the doctrine of consular nonreviewability, the Supreme Court held that, even where a visa denial implicates constitutional rights, judicial review is limited to determining to whether the consular officer provided a facially legitimate and bona fide reason for the denial.  *See Mandel*, 408 U.S. at 768–770.  The Court noted that, if the consular officer premised the denial on a facially legitimate and bona fide reason, "the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the [constitutional] interests of those" challenging the denial.  *See id.* at 770.

The First Circuit has only had occasion to apply the facially legitimate and bona fide standard of *Mandel* in a handful of cases.  And while in the earliest of these cases, the First Circuit allowed courts some leeway to probe into the sufficiency of the evidence supporting the reasons provided for a visa denial, *see Adams v. Baker*, 909 F.2d 643, 649–50, (1st Cir. 1990) (permitting a review of the adequacy of the evidence supporting the reason cited for exclusion, but cautioning that the court's review was "limited to the determination of whether there was sufficient evidence" to support that reason); *Allende v. Shultz*, 845 F.2d 1111, 1116, 1121 (1st Cir. 1988) (affirming a grant of summary judgment in the plaintiffs' favor where the consular officer relied on a statutorily prohibited basis for exclusion), more recent decisions have appeared to cabin the breadth of *Mandel* review.  In *Chiang*, for example, the First Circuit determined that a consular officer had

provided a facially legitimate and bona fide reason for exclusion where he "simply said that no visa could issue since the parties were already married." 582 F.3d at 243. Although the plaintiff challenged the legality of the alleged marriage, the First Circuit noted that "[d]istrict courts have no authority or jurisdiction to go behind the facial reason to determine whether it is accurate-for example, because the marriage would not be recognized." *Id.*

A recent decision before the Supreme Court similarly suggests that courts cannot look behind the facially legitimate and bona fide reasons offered by consular officers. In *Kerry v. Din*, 135 S. Ct. 2128 (2015), Justice Kennedy, whose opinion provided the narrowest and thus the governing holding for the fragmented court, *see Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (citations and internal quotation marks omitted)), concluded that the "Government satisfied any obligation it might have had to provide [the plaintiff] with a facially legitimate and bona fide reason for its action when it provided notice that her husband was denied admission to the country under § 1182(a)(3)(B)." *Din*, 135 S. Ct. at 2141 (Kennedy, J., concurring). It reasoned that "the Government's decision to exclude an alien it determines does not satisfy one or more of [the statutory] conditions [for a visa] is facially legitimate under *Mandel*" and that "the citation of [a specific provision] also indicates [the Government] relied upon a bona fide factual basis for denying a visa" application. *Id.* at 2140.

Applying the guidance of *Chiang* and *Din*, the Court determines that the consular officer provided a facially legitimate and bona fide reason for exclusion in this case. The consular officer denied Mr. Rocha a visa because he was "not able to demonstrate that [his] intended activities in

the United States would be consistent" with the requirements of § 1101(a)(15)(R)[6] and "ha[d] not demonstrated that [he] ha[s] the ties that will compel [him] to return to [his] home country after [his] travel to the United States." (Docket No. 11-1 at 49). Because the regulatory framework governing the issuance of R-1 visas places the burden on the applicant to demonstrate his eligibility and intention to depart the United States, the failure to make a showing under § 1105(a)(15)(R) or § 214.2(r)(15) is a valid, or facially legitimate, reason to deny an applicant a visa.[7] *See* §§ 1184, 1361; *Chiang*, 582 F.3d at 243; *cf. Din*, 135 S. Ct. at 2140 (Kennedy, J., concurring) (finding the decision "to exclude an alien" who "does not satisfy one or more of [the statutory] conditions" for a visa "facially legitimate under *Mandel*"). Moreover, because the consular officer cited to specific statutory provisions governing the issuance of an R-1 visa when denying Mr. Rocha's application, she provided a bona fide factual basis for excluding Mr. Rocha.[8,9] *See Chiang*, 582 F.3d at 243;

---

[6] Given the alleged exchange between Mr. Rocha and the consular officer (Docket No. 1 at 4), the consular officer appeared to premise her ineligibility finding on the fact that Mr. Rocha had already been in the United States for five years. *See* § 1101(a)(15)(R) (noting that an alien is only eligible for R status if he "seeks to enter the United States for a period not to exceed 5 years").

[7] Liberty Church asserts that consular officer could not have lawfully found Mr. Rocha ineligible for R status because the Government already determined he met its requirements when it approved Liberty Church's Form I-129 petition. But an approved petition does not guarantee the grant of a nonimmigrant visa. A consular officer must independently determine that an applicant has met the requirements for R status before issuing any such visa. The Government's approval thus has no bearing on the legitimacy of the reasons cited by the consular officer.

[8] To the extent Liberty Church challenges the accuracy of this factual basis and suggests that the consular officer's rationale is not bona fide given the record before her, the Court lacks the authority or jurisdiction to resolve this dispute. *See Chiang*, 582 F.3d at 243 ("District courts have no authority or jurisdiction to go behind the facial reason to determine whether it is accurate-for example, because the marriage would not be recognized."). But even if the Court had jurisdiction, it would hesitate to say the evidence submitted by Mr. Rocha was so overwhelming as to only permit a finding of eligibility.

[9] Several circuits have suggested that a rationale is not bona fide if it is made in bad faith, *see, e.g., Yafai v. Pompeo*, 912 F.3d 1018, 1022 (7th Cir. 2019); *Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 126 (2d Cir. 2009); *Bustamante v. Mukasey*, 531 F.3d 1059, 1063 (9th Cir. 2008), and Liberty Church makes allegations from which the Court can plausibly infer the existence of bad faith as to the determination that Mr. Rocha had not shown an intention to depart the United States when his visa expired. Because Liberty Church does not suggest that the consular

9

*cf. Din*, 135 S. Ct. at 2140 (Kennedy, J., concurring) (finding that, by citing to a specific provision, the Government had shown it "relied upon a bona fide factual basis for denying a visa" application).  The Court accordingly must ***grant*** the motion to dismiss.

## Conclusion

For the reasons stated above, the Court ***grants*** Defendants' motion and dismisses all claims against them.  (Docket No. 8).

**SO ORDERED**

>   */s/ Timothy S. Hillman*
>   **TIMOTHY S. HILLMAN**
>   **DISTRICT JUDGE**

---

officer acted in bad faith in determining he had already been in the United States for five years, however, the Court declines to probe further into the merits of the consular officer's denial.  Even if the Court were to set aside the determination as to intention to depart, the consular officer still provided at least one bona fide reason for Mr. Rocha's exclusion.